IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GEORGE S. PATTERSON, DONNA GRIFFIN, for themselves and others similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>TIME WARNER OPERATIONS, INC., BIRMINGHAM CABLE COMMUNICATIONS, INC., and AMERICAN TELEVISION AND COMMUNICATIONS, INC.,<br><br>　　　　Defendants. | Case No. CV-97-TMP-2915-S |

*************************************************

| | |
|---|---|
| BARBARA MEEKS, SHERRY WALLACE JOHN P. DeJARNETTE, III, and BEVERLY KEETON, individually and for a class of other persons similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>COMCAST CABLEVISION CORPORATION OF ALABAMA, MARCUS CABLE OF ALABAMA, INC., BIRMINGHAM CABLE COMMUNICATIONS, INC., and TCI CABLEVISION OF ALABAMA, INC.,<br><br>　　　　Defendants. | Case No. CV-97-C-3087-W |

### MEMORANDUM OPINION AND ORDER

These two actions come before the court on the motions to

1

consolidate[1] filed by various defendants and the motions to remand[2] filed by the respective plaintiffs in each. Under the court's usual procedure, the motions to consolidate were referred to the undersigned for decision as the judicial officer to whom the older of the cases was assigned. At a hearing held February 8, 1998, the motions to consolidate and the motions to remand were argued and taken under submission by the court. The parties subsequently notified the court that they all consented for the undersigned magistrate judge to exercise jurisdiction under 28 U.S.C. § 636(c), but only for the limited purpose of deciding the motions heard at the February 8 hearing.[3]

## Claims and Parties

Both of these actions purport to assert claims on behalf of individual plaintiffs and a class of cable-television

---

[1]   See Document 4 filed in the Patterson action.

[2]   See Document 6 in the Patterson action and Document 12 in Meeks.

[3]   See Document 15 filed in the Patterson action. Section 636(c) dispositive jurisdiction can be based upon the consent of all the parties for "any or all proceedings ...." Here, the parties have consented to § 636(c) jurisdiction only for the limited purposes of deciding the motions to consolidate and the motions to remand.

2

subscribers who have been charged a "late fee" by their respective cable suppliers. The Patterson action was originally filed in the Circuit Court of Jefferson County and removed to this court on November 3, 1997; the Meeks action was filed initially in the Circuit Court of Sumter County and removed here on November 25, 1997. The plaintiffs in Patterson sued three defendants, asserting that they provide cable television service in Bessemer and Birmingham and have charged customers an excessive "late fee" for overdue charges. It appears to be undisputed that the correct name for the defendant operating the Birmingham and Bessemer cable systems is "Time Warner Entertainment-Advance/Newhouse Partnership" (referred to as "TWE-A/N").[4]

In Meeks, the four named plaintiffs have sued several separate cable providers, including TWE-A/N, Comcast Cablevision Corporation of Alabama, Marcus Cable of Alabama, Inc., and TCI Cablevision of Alabama, Inc. Plaintiff Meeks alleges that she is a cable customer of Comcast in Panola, Alabama; plaintiff Wallace

---

[4] Defendants claim that Time Warner is one partner in the partnership. The cable television services provided both in Birmingham and Bessemer are owned by TWE-A/N, of which Time Warner is a partner. Birmingham Cable Communications, Inc., no longer exists, having been bought out several years ago. Finally, American Television and Communications, Inc., is an affiliate of Time Warner, but owns no interest in either the Birmingham or Bessemer cable systems.

3

a customer of Marcus in Adamsville; plaintiff DeJarnette a customer of Birmingham Cable (now TWE-A/N) in Birmingham; and plaintiff Keeton a customer of TCI in Pleasant Grove.  Because cable systems operate in defined geographical areas, each particular plaintiff had dealings only with the cable system in his or her area and with no others.  Thus, although plaintiff Wallace was a customer of Marcus, she had no dealings with and has no claim against TWE-A/N, Comcast, or, TCI.  Likewise, Keeton asserts a claim against TCI, but no others, and DeJarnette claims against TWE-A/N, but no others.[5]

Both of these cases were removed to this court on the assertion of diversity jurisdiction under 28 U.S.C. § 1332, which, of course, requires complete diversity between all plaintiffs and all defendants and that the controversy involve more than $75,000, exclusive of interest and costs.  Analysis of the Patterson case turns out to be relatively simple because both named plaintiffs are suing, ultimately, the same defendant, TWE-A/N.  The Meeks case is not so simple because the separate plaintiffs in reality are suing

---

[5] The Meeks plaintiffs, and in particular DeJarnette, have now moved to dismiss their claims against American Television and Communications Corporation, (now TWE-A/N), saying that because the Patterson plaintiffs are pursuing that defendant, they do not wish to engage in duplicative litigation.  See Document 11 in the Patterson file.

4

separate defendants in factually distinct claims. Although the claims asserted by the plaintiffs against their respective cable suppliers invoke the same legal theories and seek the same relief, they are each separate actions which cannot be collapsed together for the purpose of determining jurisdiction. The claims alleged by Meeks, Wallace, DeJarnette, and Keeton against their respective cable suppliers are improperly joined here in one suit, at least for purposes of determining the propriety of removal. Meeks's claim against Comcast has nothing to do with Wallace's claim against Marcus; DeJarnette's claim against TWE-A/N has nothing to do with Keeton's claim against TCI. While there is a superficial similarity based on the legal theories asserted, the transactions between these plaintiffs and their separate cable suppliers were all factually unrelated. Therefore, to determine whether any of these claims was properly removed, each must be analyzed separately without blending jurisdictional facts from one to the other.

In sum, Patterson and Griffin have alleged claims against TWE-A/N, and they are properly joined in doing so. Each of the Meeks plaintiffs, however, has targeted a different defendant, so that their claims must be analyzed separately to determine the court's jurisdiction as to each of them. See *Tapscott v. MS Dealer*

*Service Corp.*, 77 F.3d 1353 (11th Cir., 1996).

### Propriety of Removal

At the outset, it appears that the propriety of removal is in question only as to the claims against defendants TWE-A/N and Marcus. Plaintiff Meeks concedes that she may haved named the wrong Comcast entity as a defendant and does not oppose dismissal of her claim *without* prejudice. (*See* Document 17 in Meeks case). Furthermore, TCI has neither joined in the removal of the claim against it nor has it filed its own notice of removal. In short, in analyzing the claims of the Meeks plaintiff's against their respective defendants, Keeton's claim against TCI was removed to this court improperly because TCI has not sought that removal. Nothing in the court file suggests that TCI either affirmatively moved for removal or "joined" in the removal effected by the other defendants. TCI has not consented to the removal. Thus, it appears that Keeton's claim against TCI should be remanded to the Circuit Court of Sumter County.[6]

Clearly TWE-A/N and Marcus have moved for removal or

---

[6] It is not at all clear that venue for Keeton's claim against TCI lies in Sumter County. But since that is the court from which it was removed, it will be remanded there and that court can address whether venue is proper.

6

joined in the removal accomplished by the other. It appears to be undisputed that both have citizenship diverse from the respective plaintiffs alleging a claim against them. The partners comprising TWE-A/N, Time Warner Entertainment LP and Advance/Newhouse LP, both are themselves limited partnerships organized in and having their principal places of business in states other than Alabama. Similarly, Marcus is a Delaware corporation with its principal place of business in Dallas, Texas. Plaintiffs concede that diversity of citizenship exists between them and these two defendants.

What plaintiffs do not concede is that either defendant can show that the claims against them meet the jurisdictional minimal amount of $75,000 necessary to establish diversity jurisdiction. Absent that jurisdiction, removal was improper.[7] Plaintiffs in both cases argue that their individual claims, and those of each putative class member, are each less than the jurisdictional minimum. Since the separate claims of class members cannot be aggregated to meet the jurisdictional amount, see *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511

---

[7] There is no argument that plaintiffs have asserted federal claims against the defendants for purposes of showing federal-question jurisdiction. The removal rises or falls on diversity jurisdiction.

7

(1973), the claim of at least one plaintiff must be worth more than $75,000 for there to be original jurisdiction supporting the removal.

A critical distinction exists between the claims asserted in Patterson and those alleged in Meeks. In Patterson, the plaintiffs make no claim for punitive damages, but in Meeks they do. While it is true that the individual claims for compensatory damages for being wrongfully charged a $5.00 per month late fee can never reach a total of $75,000 for any one plaintiff,[8] the total claim for <u>punitive</u> damages can be aggregated and plainly would exceed $75,000.[9] See *Tapscott*, supra. Consequently, the claim for punitive damages by DeJarnette and Wallace in the Meeks case, alleged against the admittedly diverse defendants TWE-A/N and Marcus, creates the real possibility that DeJarnette (and his class) can obtain relief against TWE-A/N of more than $75,000, and

---

[8] At the rate of $5.00 per month, a plaintiff would have to be charged the late fee for 15,000 months, or over 1,250 years, to reach the jurisdictional minimum amount.

[9] The complaint removed from the Sumter County Circuit Court expressly recites that all plaintiffs and class members seek to limit damages "actual or punitive, to an amount <u>less</u> than $74,000 for each individual plaintiff and for each class member." Notwithstanding this express limitation, the aggregation of punitive damages under *Tapscott* would cause the jurisdictional floor to be met.

that Wallace (and her class) can do so against Marcus. Assuredly, the court cannot say that there is almost a legal certainty that the members of the plaintiff classes in Meeks asserting claims against TWE-A/N and Marcus cannot recover at least $75,000 in aggregate punitive damages. Thus, the claims of DeJarnette and Wallace, for themselves and as class representatives, were properly removed and the motion to remand them is due to be denied.

The claims by Patterson and Griffin and the class they represent, however, do not seek punitive damages, only compensatory damages and injunctive relief.[10] Defendant TWE-A/N argues that even though the separate compensatory damages claims do not meet the jurisdictional minimum and cannot be aggregated to do so, the claim for injunctive relief involves more than $75,000 and, therefore, meets the jurisdictional floor.

The leading case in the Eleventh Circuit on the assessment of the value of injunctive relief for purposes of meeting the jurisdictional amount is *Ericsson GE Mobile Communications, Inc., v. Motorola Communications & Electronics, Inc.*, 120 F.3d 216, *reh'g denied*, 130 F.3d 446 (11th Cir., 1997). In that case, the appellate court made clear that the value of

---

[10] Additionally, it should be noted that none of the Patterson plaintiffs seek attorneys' fees from the defendant.

injunctive relief is assessed from the plaintiff's point of view. Quoting the old Fifth Circuit case of *Vraney v. County of Pinellas*, 250 F.2d 617, 618 (5th Cir., 1958), the court emphasized that it is "'the value to the plaintiff of the object or right sought to be enforced'" that is the measure of the amount in controversy when the relief is an injunction. Similarly, relying on *Alfonso v. Hillsborough County Aviation Authority*, 308 F.2d 724, 726-27 (5th Cir., 1962), the current court wrote, "the Alfonso court stated that '[t]he value to the plaintiff of the right to be enforced or protected determines the amount in controversy' and concluded that the alleged damage to the homes of the individual plaintiffs was insufficient to satisfy the amount in controversy requirement."

The reliance of the current court on these cases is instructive for two reasons. First, the court makes clear that the amount in controversy is determined from the plaintiff's viewpoint.[11] Also, the particular outcome in *Alfonso* re-emphasizes

---

[11] Defendant TWE-A/N relies greatly on Judge Blackburn's decision in *Edge v. Blockbuster Video*, CV-96-B-2341-S, to argue that injunctive relief, like punitive damages discussed in *Tapscott*, is a "common and undivided" interest held by the entire class, not separate and distinct claims of class members. This reasoning simply means that injunctive relief in every class action is valued from the point of view of the defendant, contrary to the holding in *Ericsson*. An injunction granted in favor of a class against a defendant, if it is an undivided

that the value of the right sought to be protected by injunctive relief is measured separately for each individual plaintiff. Stated another way, the value of the injunctive relief is not aggregated; the court must determine the value of the injunctive relief as to each individual plaintiff and not the group or class of plaintiffs as a whole.

In the context of this case, applying these two tenets makes plain that the value of the object of the litigation in Patterson is far less than the $75,000 jurisdictional amount. Viewing the value of the injunctive relief from the viewpoint of the individual plaintiffs, an injunction prohibiting the collection of a $5.00 per month late fee is worth, at best, only a few hundred dollars to each plaintiff. Just as with a claim for compensatory damages, a plaintiff would have to be assessed late fees every month for over a thousand years before an injunction prohibiting

---

interest held by the class in common, will always mean that the value of the injunction is measured by its impact on the defendant, not its value to the plaintiffs. An injunction has no value to a class; it has value only to the extent it protects the rights of individual plaintiffs who may seek to enforce it. In sum, this court believes that the clear teaching of *Ericsson* is that the value of injunctive relief is measured from each individual plaintiff's point of view, not the defendant's point of view. The court is bound by *Ericsson* and its citation to the earlier *Alfonso* and *Vraney* cases.

11

such a practice would be worth $75,000 to him.[12]  Moreover, the limited value of injunctive relief to each separate class member cannot be aggregated to meet the amount in controversy requirement. The holding in *Alfonso* was clear that the value of the object of the litigation must be looked at separately for each individual plaintiff.[13]  While this holding predated *Zahn v. International Paper*, its rationale is consistent with it.

Finally, in passing, the court will address whether attorneys' fees from a common fund can establish the jurisdictional amount in controversy.  Defendants argue that if the plaintiff class recovers, their attorneys stand to receive a fee out of the recovery far in excess of the $75,000 jurisdictional minimum,

---

[12] Defendant TWE-A/N has offered the affidavit of Sharon Buczek to show that such injunctive relief would cost it over $100,000 a year.  This, however, does nothing more than attempt to value the object of the litigation from the defendant's point of view, contrary to *Ericsson*.

[13] In *Alfonso*, homeowners around an airport sued in a class action for injunctive relief to prevent the expansion of the airport, claiming that expansion would damage the value of their homes nearby.  Finding that the jurisdictional amount in controversy was not met, the old Fifth Circuit observed that the "alleged damage to the homes of the individual plaintiffs was insufficient to meet the amount in controversy requirement." [Emphsis added].  *Alfonso v. Hillsborough County Aviation Authority*, 308 F.2d 724, 726-27 (5th Cir., 1962).  Plainly, the court refused to aggregate the claims of damage, or stated more correctly, refused to aggregate the value the injunction would have had to prevent damage to the individual homes.

which is a "common and undivided interest" of the entire class, like punitive damages. They have cited recent decisions by Judges Blackburn and Pointer holding that the possibility of an attorneys' fee collected by class counsel out of the common recovery of the class is enough to meet the amount in controversy requirement.[14] The undersigned is unpersuaded by these decisions that a <u>common-fund</u> attorneys' fee has any relevance to the amount in controversy requirement.

This court believes that these decisions misconstrue a common-fund attorneys' fee as a form of relief comparable to punitive damages. Unlike an attorneys' fee awarded to a party and payable by the other party under a fee-shifting statute or contract provision,[15] a fee taken from the common-fund of the class recovery

---

[14] See letter of John E. Goodman, dated March 20, 1998, to which is attached copies of opinions in *Culverson v. General Motors Acceptance Corporation*, CV-96-B-331-J; *Davis v. Carl Cannon Chevrolet-Olds*, CV-97-P-2889-J; and *Nelson v. Carnival Cruise Lines*, CV-97-P-2513-W.

[15] Compare *Howard v. Globe Life Insurance Co.*, 973 F.Supp. 1412, 1420 (N.D.Fla. 1996), which involved a Florida statute that shifted the plaintiff class's attorneys' fee to the defendant as a form of relief. An attorneys' fee awarded under a fee-shifting provision <u>is</u> a distinct form of relief sought by the plaintiff class against the defendant and which, certainly, is in controversy between them. Thus, while an attorneys' fee awarded as a form of relief against the defendant might well be a basis for meeting the "amount in controversy" requirement, a fee from a common fund is not.

13

is not a separate and distinct form of relief comparable to punitive or compensatory damages, or even an injunction. Once the common fund of the class recovery is established from compensatory and, perhaps, punitive damages, class counsel's fee is <u>deducted</u> from it. It is the plaintiff class, not the defendant, that pays the common-fund attorneys' fee. Because the defendant does not pay the fee, it is not a part of the "controversy" between the parties, any more so than the contingency fees collected by counsel in individual tort cases.

      Nothing in *Tapscott* suggests that an attorneys' fee taken from the common recovery of the class, as distinct from an attorney's fee the defendant is ordered to pay, is a form of relief controverted between the parties. To allow the defendant to remove a case on the contention that the <u>plaintiffs</u> will have to pay their own attorneys more than $75,000 in fees is to allow the defendant to remove the case on the basis of something it is not a party to. Whether the common-fund of damages obtained by the plaintiffs will be reduced to pay their attorneys has no impact whatsoever on the defendant. Paraphrasing *Tapscott*, it is true the defendant is disinterested in the distribution of the fee, but only because it

14

is not having to pay it.[16]

Furthermore, to conclude that a common-fund attorneys' fee can be the basis for meeting the jurisdictional amount in controversy is to conclude that virtually <u>all</u> class actions are removable to federal court. Almost all class actions involve the possibility that class counsel will receive a fee greater than $75,000, in most cases paid by counsel's client, the plaintiff class, not the defendant. Holding that the jurisdictional amount in controversy is met if class counsel is entitled to a "cut" of his clients' recovery, is a great and unwarranted expansion of removal jurisdiction, not supported by *Tapscott*.

### Conclusion

To summarize, the court concludes that the motion to remand filed by the plaintiffs in the Patterson case is due to be and hereby is GRANTED, and the Clerk is DIRECTED to remand CV-97-TMP-2915-S to the Circuit Court of Jefferson County, Bessemer Division, forthwith. Further, the court finds that the motion to remand filed on behalf of plaintiff Keeton in CV-97-C-3087-W is due

---

[16] Again, the court distinguishes between a common-fund fee and an attorneys' fee paid by the defendant under a fee-shifting provision.

to be and hereby is GRANTED, and the Clerk is DIRECTED to remand the action by Keeton, both individually and as a class representative, against defendant TCI Cablevision, Inc., to the Circuit Court of Sumter County forthwith. The motions to remand filed by DeJarnette and Wallace as to their respective claims against TWE-A/N and Marcus in CV-97-C-3087-W are hereby DENIED.[17]

Furthermore, because the entire case in Patterson is being remanded, the motion to consolidate Meeks with it is due to be and hereby is DENIED.

The Clerk is DIRECTED to forward a copy of this Memorandum Opinion and Order to all counsel of record in these two cases.

DATED this the 31st day of March, 1998.

_____
T. MICHAEL PUTNAM
CHIEF MAGISTRATE JUDGE

---

[17] The undersigned further RECOMMENDS to Judge Clemon, however, that the claim asserted by plaintiff Meeks, both individually and as a class representative, against Comcast be DISMISSED WITHOUT PREJUDICE because she apparently has sued the wrong Comcast entity. Furthermore, the undersigned RECOMMENDS to Judge Clemon that the motion to dismiss filed by plaintiff DeJarnette as to TWE-A/N be GRANTED and that claim DISMISSED WITHOUT PREJUDICE.